IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALIEN TECHNOLOGY CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3:06-CV-51 |
| v. | ) ) | |
| INTERMEC, INC., a Delaware corporation, INTERMEC TECHNOLOGIES CORP., a Washington corporation, and INTERMEC IP CORP., a Delaware corporation, | ) ) ) ) ) | Judge Rodney S. Webb  Magistrate Judge Karen K. Klein |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION TO DISMISS**

# TABLE OF AUTHORITIES

I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION ......................................................6

   *BP Chemicals Ltd. v. Union Carbide Corp.,*
      4 F.3d 975 (Fed. Cir. 1993)..........................................................................6, 10

   *Shell Oil Co. v. Amoco Corp.,*
      970 F.2d 885 (Fed. Cir. 1992)........................................................................6, 9

   *Gibbs v. Buck,*
      307 U.S. 66, 59 S.Ct. 725 (1939)......................................................................7

   *Antonius v. Spalding,*
      275 F.3d 1066 (Fed. Cir. 2002).....................................................................8, 16

   Fed.R.Civ.P. 11 .....................................................................................8

   *American Needle and Novelty, Co. v. Schuessler Knitting Mills,*
      379 F.2d 376 (7th Cir. 1967) ...........................................................................8

   *Cygnus Therapeutics Systems v. Alza Corp.,*
      92 F.3d 1153 (Fed. Cir. 1996), *overruled on other grounds, Nobelpharma AB
      v. Implant Innovations, Inc.,* 141 F.3d 1059, 1068 (Fed. Cir. 1998) .........................8, 9

   *West Interactive Corp. v. First Data Resources, Inc.,*
      972 F.2d 1295 (Fed. Cir. 1992).......................................................................9

   *International Harvester Co. v. Deere & Co.,*
      623 F.2d 1207 (7th Cir. 1980) ........................................................................9

   *McPherson's Ltd. v. Never Dull, Inc.,*
      960 F.2d 156, 1992 WL 52140 (Fed. Cir. 1992) .........................................10

   *Sierra App'd Sciences, Inc. v. Advanced Energy Inds., Inc.,*
      363 F.3d 1361 (Fed. Cir. 2004).......................................................................10

   *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,*
      57 F.3d 1051 (Fed. Cir. 1995)........................................................................10

   *GAF Building Materials Corp. v. Elk Corp. of Dallas,*
      90 F.3d 479 (Fed. Cir. 1996).........................................................................10

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*,
    846 F.2d 731 (Fed. Cir. 1988)........................................................................10

**II.   THIS COURT LACKS PERSONAL JURISDICTION OVER INTERMEC IP** ............................11

*Silent Drive, Inc. v. Strong Industries, Inc.*,
    326 F.3d 1194 (Fed. Cir. 2003).................................................................11

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998)...........................................................11, 12

*World-Wide Volkswagon v. Woodson*,
    444 U.S. 286, 297, 100 S.Ct. 559 (1980)................................................11

*Northpole US, LLC v. Price*,
    No. 4:06CV0148 TCM, 2006 WL 1520641 (E.D. Mo. May 31, 2006) ...............11, 12

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
    466 U.S. 408, 104 S.Ct. 1868 (1984)......................................................12

*Burger King v. Rudzewicz*,
    471 U.S. 462, 476, 105 S.Ct. 2174 (1985)..............................................12

**III.   THIS COURT LACKS PERSONAL JURISDICTION OVER INTERMEC, INC.**........................13

    *See supra* at § II

**IV.       THIS COURT LACKS PERSONAL JURISDICTION OVER INTERMEC
TECHNOLOGIES** ........................................................................................13

*Ensign v. Bank of Baker*,
    676 N.W.2d 786 (N.D. 2004) ...............................................................14

*Stairmaster Sports/Medical Prods., Inc. v. Pacific Fitness Corp.*,
    916 F. Supp. 1049 (W.D. Wash. 1994), *aff'd* 78 F.3d 602 (Fed. Cir. 1996)................14

*McGill Tech. Ltd. v. Gourmet Tech., Inc., et al.*,
    300 F. Supp. 2d 501 (E.D. Mich. 2004).............................................14, 15

*Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*,
    62 Fed. Appx. 322 (Fed. Cir. 2003) .......................................................14

    *See also supra* at § II

V.      VENUE IS NOT PROPERLY LAID IN THIS DISTRICT ............................................15

        28 U.S.C., § 1391 (b) and (c)..............................................................................15

VI.     ALIEN'S COMPLAINT FAILS TO STATE A CLAIM ............................................15

        Fed.R.Civ.P. 8 ......................................................................................................15

        *Conley v. Gibson*,
            355 U.S. 41, 47, 78 S.Ct. 99 (1957)..................................................................15

        *Ondeo Nalco Co. v. Eka Chems., Inc.*,
            Case No. Civ.A. 01-537-SLR, 2002 U.S. Dist. LEXIS 26195
            (D.Del. June 10, 2002)......................................................................................16

        *Antonius v. Spalding*,
            275 F.3d 1066 (Fed. Cir. 2002)..................................................................8, 16

## INTRODUCTION

Alien Technology Corporation ("Alien") started this lawsuit in this Court on June 1, 2006 by filing a Complaint for a declaratory judgment against Intermec, Inc. ("Intermec") and Intermec IP Corp. ("IIP"). During the next two weeks, Alien apparently decided that it needed to add one more party to this action. Accordingly, Alien filed its First Amended Complaint on June 16, 2006, several days before the deadline for original defendants to answer or otherwise respond to the original Complaint. The only difference between the original and the First Amended Complaints was the addition of Intermec Technologies Corp. ("ITC") as a defendant.

Alien alleges that this Court has subject matter jurisdiction over Alien's claims for declaratory relief "by reason of Title 28, United States Code, Sections 1331 and 1338(a)." First Amended Complaint ("Am. Compl.), attached to the Decalaration of David S. Becker ("Becker Decl.") as Exhibit A, at ¶ 5. The only basis for this claim is the assertion that, on May 8, 2006, Intermec, IIP and ITC (the "Intermec defendants") threatened to sue Alien for patent infringement and engaged in other conduct that has created in Alien an objectively reasonable apprehension of suit." Am. Compl. at ¶ 1.

The First Amended Complaint goes on to request that this Court declare that 10 radio frequency identification ("RFID") patents owned by IIP (the "patents-in-suit") are "invalid and further to declare that, by making, using, or offering to sell its products, Alien does not infringe any valid claim of the patents in suit." Am. Compl. at ¶ 1. Although Alien was required to describe the Alien products that were the subject of the alleged threat, it failed to do so. *See generally* Am. Compl.

Alien alleges that this Court can exercise personal jurisdiction over Intermec, IIP and ITC. Am. Compl. at ¶ 6. The only basis for this claim is the "information and belief" assertion that "the Intermec Defendants provide supply chain information products, services, and systems to companies in hundreds of industries around the world, and the Intermec Defendants serve thousands of customers worldwide, including customers in the State of North Dakota." Am. Compl. at ¶ 6.

Alien also alleges that venue is properly laid in this Court. The only basis for this claim is the same one given in support of the personal jurisdiction claim – i.e., the "information and belief" allegation that "the Intermec Defendants provide supply chain information products, services and systems to companies in hundreds of industries around the world, and the Intermec Defendants serve thousands of customers worldwide, including customers in this District." Am. Compl. at ¶ 6.

For the reasons set forth below, the First Amended Complaint must be dismissed without leave to amend because this Court lacks subject matter jurisdiction and the defect cannot be cured. The First Amended Complaint must also be dismissed without leave to amend because this Court lacks personal jurisdiction over Intermec, IIP and ITC and this defect cannot be cured. Finally, the First Amended Complaint must be dismissed for failure to state any claim for which relief can be granted because Alien failed to identify the products supposedly at risk to a patent infringement suit with the specificity required by law.

## STATEMENT OF THE FACTS

The Plaintiff.  Alien, is incorporated in the State of Delaware and has its principal place of business in Morgan Hill, California. Am. Compl. at ¶ 2. "Alien is a manufacturer of [RFID] products." *Id.*

The Defendants. Intermec and IIP are incorporated under the laws of Delaware. Declaration of Kenneth Cohen ("Cohen Decl."), attached to Becker Decl. as Exhibit B, at ¶¶ 8, 15.  ITC is incorporated under the laws of Washington.  *Id.* at ¶ 22.  Intermec and ITC are headquartered in Everett Washington and IIP is headquartered in Henderson, Nevada. Cohen Decl. at ¶¶ 8, 15, 22.

Contrary to Alien's assertions, Intermec is nothing more than a holding company.  Cohen Decl.. at ¶ 9.  Intermec does not manufacture or sell any products or sell any services of any kind whatsoever.  Cohen Decl. at ¶ 9.  Intermec does not have any customers in North Dakota or anywhere else. Cohen Decl. at ¶ 9, 10.  Intermec has no offices or employees located in North Dakota and Intermec does not own any assets located in that state.  Cohen Decl. at ¶ 9-11. Intermec has never paid taxes in the State of North Dakota and has never filed suit in that state. Cohen Decl. at ¶ 13, 14.

IIP is a wholly-owned subsidiary of ITC and the sole owner of the RFID patents-in-suit. Cohen Decl. at ¶¶ 16, 22.  IIP's only business is to own patents, enforce them, and collect royalties.  Cohen Decl. at ¶ 16.  IIP has no offices or employees in North Dakota and it has never paid taxes or filed suit in that state.  Cohen Decl. at ¶¶ 18, 20, 21.

ITC, a wholly-owned subsidiary of Intermec, manufacturers and sells automated identification and data collection ("AIDC") products, systems and related services, including

RFID products, systems and services.  Cohen Decl. at ¶ 23.  ITC does not manufacture any products in North Dakota, it has no offices or employees in that state, it does not own any assets located in that state and it has never paid taxes or filed suit in that state.  Cohen Decl. at ¶¶ 24, 25, 27, 30.

In its most recent fiscal year (2005), ITC sold products into and provided services elsewhere for entities in North Dakota of less than $270,000.  Cohen Decl. at ¶ 28.  This is only .0571 percent of ITC's 2005 U.S. sales of $472,670,567.  *Id.*  Of ITC's North Dakota sales, $182,000 or 67% were made to a single customer largely for services provided outside the state of North Dakota.  *Id.*  None of those North Dakota sales were for the types of RFID products at issue in this case.  Cohen Decl. at ¶ 29.

The Non-Existent Threat.    As noted earlier, Alien has alleged that the Intermec defendants threatened to sue Alien for infringement of the patents-in-suit on May 8, 2006.  That assertion is completely false since none of the Intermec defendants directly informed Alien of any intent to file an infringement suit involving the patents-in-suit on May 8, 2006 or any date prior to June 1, 2006 when the original Complaint was filed.  *See* Cohen Decl. at ¶ 5, 6, 7; *see also generally* Transcript of the Intermec, Inc. Earning Conference Call, Dated May 8, 2006 ("Earnings Call Tr."), attached to Becker Decl. as Exhibit C, at pp. 11-12, 15-16.

The only thing that happened prior to the filing of the original Complaint on June 1, 2006 was Intermec's earnings call on May 8, 2006 (the "Earnings Call").  Cohen Decl. at ¶ 6.  Nothing said during the Earnings Call could possibly create an objectively reasonable apprehension that Alien was in immediate jeopardy of being sued for infringement by IIP, the sole owner of the RFID patents-in-suit.  *See* Earnings Call Tr. at 11-12, 15-16.

Possible infringers like Alien were only mentioned twice during the Earnings Call.  The first occurred when Steve Winter, Senior Vice President of Intermec was asked the following question and gave the following answer from Intermec's headquarters in Everett, Washington:

**Question**

\*          \*          \*

One question on RFID and royalty revenues on a go-forward basis.  You have a number of non-licensed companies out there selling products, some of which are winning large size contracts,.  How long can you wait before needing to step in and enforce the Rapid Start program?

**Answer**

\*          \*          \*

It's obviously disappointing if any customer were to do business with a supplier that is not licensed.  But you know, we have consistently stated we will be pursuing infringers.  We are putting together cases.  We are looking at those who are most disruptive to the industry right now.  And basically, preparations are underway with respect to unlicensed suppliers like Alien and others.  And we expect those enforcement actions by the end of the year, or within this year.

Earnings Call Tr. at pp. 11-12.

The second and last reference to Alien during the Earnings Call occurred when Intermec's Chairman and Chief Executive Officer, Larry Brady was asked the following question and gave the following response from Intermec's headquarters in Everett, Washington:

**Question**

In terms of the fact that you mentioned on this call that you might be taking some legal action against folks that have not been signed up so far for Rapid Start at some point during the year, could you give us some color as to what potential impact on your SG&A line could be of taking such action, or whether similar to the (indiscernible) settlements you might have it not impacting you expense line in the near-term?

**Answer**

\*          \*          \*

I think given the circumstances that we are currently looking at – that is, the amazing propensity of people to take business well below cost, and the amazing publicity which such actions receive – that we are apt to move in advance of where we would have originally intended. And indeed, the limitation on when we will take action now is more related to just the [wickets] that we have to go through – that is, get the product, and disassemble the product and understand that infringement is occurring. Because we've got a certain obligation, before we can just go out and willy nilly start filing lawsuits, to demonstrate that there's a cause of action. So that is the path that we are currently on.

Earnings Call Tr. at pp. 15-16.

## ARGUMENT

### I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION.

For a declaratory-judgment action for non-infringement or invalidity of a patent to survive a motion to dismiss on subject matter jurisdiction grounds, the plaintiff must establish that two conditions have been satisfied. First, as of the date of the complaint, there must have been an explicit threat or other action by the patent owner that creates an objectively reasonable apprehension on the part of the plaintiff that it is about to be sued for patent infringement. Second, as of the date of the complaint, there must be activity that would constitute infringement or concrete steps taken with the intent to conduct such activity. *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 979 (Fed. Cir. 1993). The burden of pleading and proving the existence of an actual controversy is on the plaintiff. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992).

Alien's claim that a case or controversy existed as of the date of the original Complaint (June 1, 2006) rests on a single, conclusory reference to May 8, 2006, a time when Alien alleges that Intermec "threaten[ed] to sue Alien for patent infringement . . . ." Am. Compl. at ¶¶ 1, 20, 26, 32, 38, 44, 50, 56, 62, 68, and 74. Unsupported conclusions, however, are insufficient to withstand a motion to dismiss and this Court may look behind the complaint and view the actual

facts to determine whether a controversy actually exists.  *Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725 (1939) ("The burden of showing by the admitted facts that the federal court has jurisdiction rests upon the complainants.  If there were any doubt of the good faith of the allegations, the court might have called for their justification by evidence.")

The only possibly relevant event that occurred on May 8, 2006 was the Earnings Call in which Intermec executives gave a statement to and answered questions posed by a group of financial analysts.  Possible infringers like Alien were only mentioned twice during the Earnings Call and no reasonable person could conclude from those comments that a patent infringement lawsuit by Intermec against Alien was imminent.

During the question-and-answer portion of the Earnings Call, Steve Winter, President and C.O.O. of Intermec, gave the following answer regarding potential infringement actions against third parties:

> But you know, we have consistently stated we will be pursuing infringers.  We are putting together cases.  We are looking at those who are most disruptive to the industry right now.  And basically, preparations are underway with respect to unlicensed suppliers like Alien and others.  And we expect those enforcement actions by the end of the year, or within this year.

Earnings Call Tr. at pp. 11-12.  Later in the Earnings Call, Larry Brady, President, Chairman and CEO of Intermec, explained the "preparations" that were underway:

> I think given the circumstances that we are currently looking at -- that is, the amazing propensity of people to take business well below cost, and the amazing publicity which such actions receive -- that we are apt to move in advance of where we would have originally intended. ***And indeed, the limitation on when we will take action now is more related to just the wickets that we have to go through -- that is, get the product, and disassemble the product and understand that infringement is occurring. Because we've got a certain obligation, before we just go out and willy nilly start filing lawsuits, to demonstrate that there's cause of action.*** So that is the path that we are currently on.

Earnings Call Tr. at p. 16 (emphasis added).

The only conclusion that can be drawn from these May 8 comments is that Intermec was conducting an investigation of *potential* infringement against unlicensed companies selling RFID products and that the investigation involved a comparison of potentially-infringing products with the RFID patents owned by IIP. Nothing said by Messrs. Winter or Brady established that any Intermec entity had reached a conclusion about patent infringement with respect to Alien or any other unlicensed company, or that any Intermec entity was on the verge of filing a patent-infringement action against Alien or anyone else. The only conclusion that could be drawn from those comments is that Intermec had undertaken a Rule 11 investigation of RFID products sold by Alien and other unlicensed companies. *See, e.g., Antonius v. Spalding*, 275 F.3d 1066 (Fed. Cir. 2002) (a pre-filing investigation and determination of infringement is required under FED.R.CIV.P. 11).

Disclosure of a Rule 11 investigation which is not yet complete and which includes no statement of the results of the investigation is not a threat of suit sufficient to sustain a declaratory judgment action. *American Needle and Novelty, Co. v. Schuessler Knitting Mills*, 379 F.2d 376, 379 (7th Cir. 1967) (the patentee "should have the privilege of making a fair investigation as to the possible infringement of his patent without calling down on his head . . . [a] declaratory judgment suit . . . .").

In addressing a remarkably similar situation, the Federal Circuit noted that statements of a patentee, reassuring investors that it will enforce its patent portfolio, cannot give rise to a reasonable apprehension of suit on the part of an unlicensed company. *Cygnus Therapeutics Systems v. Alza Corp.*, 92 F.3d 1153, 1160 (Fed. Cir. 1996), *overruled on other grounds, Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998). In *Cygnus*,

an executive of the declaratory-judgment defendant attended a "highly visible private investment conference," and made the following statement regarding enforcement of intellectual property rights:

> The question is that I mentioned a number of companies are developing products that are covered by our patents, what is our policy. They won't market the products because we're not going to give them licenses and the patents are valid. In many cases, they've already been challenged and upheld. And our policy will be that we have spent a great deal of money developing this technology and we have a very strong proprietary position.

*Cygnus*, 92 F.3d at 1156. Despite defendant's mentioning specific companies and making affirmative statements that no license would be granted, the Federal Circuit held that the statements could not give rise to the reasonable apprehension of suit required to support a declaratory judgment action. *Id.* at 1160.

Apart from the wholly inadequate reference to the Earnings Call, Alien pleads no facts to support its claim of an objectively reasonable apprehension of a patent infringement suit. Alien alleges no facts showing any contact between it and any of the Intermec Defendants regarding the patents-in-suit. *West Interactive Corp. v. First Data Resources, Inc.*, 972 F.3d at 1295, 1297-98 (Fed. Cir. 1992) (no reasonable apprehension of suit where there was no contact between a plaintiff and a defendant); *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992) (no actual controversy where declaratory-judgment defendant had made no assertive contact concerning the patents at issue).

Alien does not claim that any of the Intermec Defendants contacted any of its customers concerning the patents-in-suit. *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1211 (7th Cir. 1980) (lack of contact between defendant and customers supported holding of no case-or-controversy). Alien also fails to identify a single Alien product as the target of the allegedly

impending infringement action, even though the pleading rules for declaratory judgment actions of this type require such specificity. *See McPherson's Ltd. v. Never Dull, Inc.*, 960 F.2d 156, 1992 WL 52140 (Fed. Cir. 1992) (dismissing a declaratory judgment action for failing to identify the products supposedly accused of infringement.); *Sierra App'd Sciences, Inc. v. Advanced Energy Inds., Inc.*, 363 F.3d 1361, 1374-5 (Fed. Cir. 2004) (requiring specific allegations of apprehension of suit for each specific product for which declaratory judgment was sought).

Alien's "case or controversy" allegations are so skimpy because nothing transpired prior to the filing of the original Complaint which would give rise to an objectively reasonable apprehension that Intermec was about to file a patent-infringement suit against Alien. At most, Alien's complaint shows it has a subjective fear of an infringement suit but, subject matter jurisdiction for a declaratory judgment action cannot be based on the "nervous mind" of a potential infringer. *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki* Kaisha, 57 F.3d 1051, 1053 (Fed. Cir. 1995) ("The reasonable apprehension of suit requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension."); *BP Chems. v. Union Carbide Corp.*, 4 F.3d 975, 979 (Fed. Cir. 1993) ("a subjective apprehension is insufficient without objective substance").

Since there was no objective evidence to support Alien's fear of a patent infringement suit on the date that the original Complaint was filed, the absence of subject matter jurisdiction cannot be cured. *GAF Building Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 482 (Fed. Cir. 1996) ("Justiciability must be judged as of the time of filing, not as of some indeterminate future date... ."); *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734 n.2 (Fed. Cir. 1988) ("The presence or absence of jurisdiction must be determined on the facts

10

existing at the time the complaint under consideration was filed."). This Court must therefore dismiss the First Amended Complaint without leave to amend.

## II.   THIS COURT LACKS PERSONAL JURISDICTION OVER INTERMEC IP.

In order for this Court to exercise personal jurisdiction over any of the defendants, Alien must make a *prima facie* showing that personal jurisdiction is appropriate in this forum as to each defendant. *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). The court considers the parties' pleadings and affidavits and makes the determination of whether there are adequate contacts with the forum to warrant the exercise of personal jurisdiction. *Id.*

Personal jurisdiction in a patent-declaratory-judgment action requires a showing of constitutionally-sufficient minimum contacts with the chosen jurisdiction. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358-59 (Fed. Cir. 1998) *citing World-Wide Volkswagon v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980) (jurisdiction in a patent-declaratory-judgment action is controlled by Federal Circuit precedent; where the state's long-arm statute is co-extensive with minimum due process requirements, defendant must have sufficient "minimum contacts" "such that [it] should reasonably anticipate being haled into" the particular district court).

The minimum-contacts test can be met where there is either general jurisdiction or specific jurisdiction. *Northpole US, LLC v. Price*, No. 4:06CV0148 TCM, 2006 WL 1520641, at *3 (E.D. Mo. May 31, 2006), *citing Red Wing Shoe*, 148 F.3d at 1359. General jurisdiction refers to situations where the defendant purposefully directs activities at residents of the forum. *Id.* In such a situation, a defendant whose contacts with the jurisdiction are continuous and

systematic may be subject to jurisdiction even though the cause of action is unrelated to the defendant's contacts with the jurisdiction. *Red Wing Shoe*, 148 F.3d at 1359, *citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868 (1984). Specific jurisdiction refers to situations where the cause of action arises out of or is related directly to a defendant's activities in the forum. *Red Wing Shoe*, 148 F.3d at 1359, *citing Burger King v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174 (1985). Whether general or specific jurisdiction is claimed by the plaintiff, random, fortuitous or attenuated contacts do not count nor do contacts resulting from unilateral activity of persons other than the defendant. *Northpole*, 2006 WL 1520641, at *3.

General jurisdiction does not exist in this district with respect to IIP because it does not make, sell or provide any products, systems or services to residents of North Dakota or residents of any other jurisdiction. Cohen Decl. at ¶¶ 16, 17. IIP's only business is to own patents, enforce them, and collect royalties from patent licensees. Cohen Decl. at ¶ 16. IIP has no offices or other assets or employees or agents in North Dakota and it has never paid taxes or filed suit in that state. Cohen Decl. at ¶¶ 18, 20, 21.

Specific jurisdiction is also lacking with respect to IIP. Alien's cause of action arises out of a threat supposedly made on May 8, 2006 to file a patent-infringement action. Not only was there no threat, but the only way that such a threat could give rise to specific jurisdiction in North Dakota is if the threat was to file a patent infringement action in the State of *North Dakota*. Nothing was said during the May 8, 2006 Earnings Call could be interpreted as a threat to file a

patent infringement lawsuit against Alien in North Dakota.  *See generally* Earnings Call Tr.  In fact, there was not a single reference to North Dakota during the Earnings Call.  *Id.*[1]

### III.   THIS COURT LACKS PERSONAL JURISDICTION OVER INTERMEC, INC.

General jurisdiction does not exist in this district with respect to Intermec because it is just a holding company.  Intermec does not make, sell or provide any product, system or service to anyone, let alone residents of the State of North Dakota.  Cohen Decl. at ¶¶ 9, 10.  Intermec is not incorporated in North Dakota, its principal place of business is not located in North Dakota and it has no offices, factories, warehouses, or other assets and no employees or agents in North Dakota.  Cohen Decl. at ¶¶ 8, 9, 10, 11.

Specific jurisdiction in this district is also lacking with respect to Intermec.  As noted earlier, Alien's cause of action arises out of an alleged threat supposedly made on May 8, 2006 to file a patent-infringement action.  Not only was there no threat, but the only way that such a threat could give rise to specific jurisdiction in North Dakota is if the threat was to file a patent-infringement action in the State of *North Dakota*.  Nothing said during the May 8, 2006 Earnings Call could be interpreted as a threat to file a patent infringement lawsuit against Alien in North Dakota.  *See generally* Earnings Call Tr.  In fact, there was not a single reference to North Dakota during the Earnings Call.  *Id.*[2]

### IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER INTERMEC TECHNOLOGIES.

ITC is not subject to general jurisdiction in North Dakota because its contacts with North Dakota are, at best, random, sporadic and attenuated.  ITC is a Washington corporation with its

---

[1] It cannot be *presumed* that the hypothetical patent infringement lawsuit would be filed in North Dakota.  There are a number of other states where Alien can be found or is transacting business, including but not limited to the state in which it is incorporated (Delaware) and the state where its principal place of business is located (California).

[2] *See* note 1, *supra*.

principal place of business in Everett, Washington.   Cohen Decl. at ¶ 22.   It does not manufacture any products in the North Dakota nor does it maintain any offices or have any employees residing in North Dakota.  Cohen Decl. at ¶¶ 24, 25.  It does not have a license to do business in the North Dakota and has never filed a tax return there.  Cohen Decl. at ¶¶ 26, 27. ITC has not brought suit in any federal or state court in North Dakota.  Cohen Decl. at ¶ 31.

Since ITC is not found in North Dakota, the only other way to obtain general jurisdiction in that state is to establish that ITC has substantial sales in North Dakota.  That showing cannot be made because ITC's sales in North Dakota are *de minimis* in the extreme.

In its most recent fiscal year (2005), ITC's U.S. sales revenues were $472,670,567. Cohen Decl. at ¶ 28.  Of that total, less than $270,000 or 0.0571% were sales to customers in the State of North Dakota and most of those revenues were generated from a single customer. Cohen Decl. at ¶ 28.  This is obviously insufficient contact to give rise to general jurisdiction in North Dakota.  *See Ensign v. Bank of Baker*, 676 N.W.2d 786, 791-92 (N.D. 2004) (holding defendant, who had no physical presence in North Dakota and provided only a limited amount of its products to North Dakota was not subject to personal jurisdiction); *Stairmaster Sports/Medical Prods., Inc. v. Pacific Fitness Corp.*, 916 F. Supp. 1049, 1053 (W.D. Wash. 1994), *aff'd* 78 F.3d 602 (Fed. Cir. 1996) (applying Federal Circuit law, court rejected personal jurisdiction over out-of-state defendant with less than 3% of total sales in forum state); *McGill Tech. Ltd. v. Gourmet Tech., Inc., et al.*, 300 F. Supp. 2d 501, 508 (E.D. Mich. 2004), *citing Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed. Appx. 322 (Fed. Cir. 2003) (same in case where out-of-state defendant had less that .25% of sales in forum state).

Specific jurisdiction is also lacking with respect to ITC. As noted earlier, Alien's cause of action arises out of an alleged threat supposedly made on May 8, 2006 to file a patent infringement action. Not only was there no threat, but the only way that such a threat could give rise to specific jurisdiction in North Dakota is if the threat was to file a patent-infringement action in the State of *North Dakota*. Nothing said during the May 8, 2006 Earnings Call could be interpreted as a threat to file a patent infringement lawsuit against Alien in North Dakota. *See generally* Earning Call Tr. In fact, there was not a single reference to North Dakota during the Earnings Call. *Id.*[3]

## V.  VENUE IS NOT PROPERLY LAID IN THIS DISTRICT

Since none of the Intermec defendants are found in the State of North Dakota and personal jurisdiction does not exist in North Dakota with respect to any of those defendants, venue is not properly laid in this district. 28 U.S.C., § 1391 (b) and (c).

## VI.  ALIEN'S COMPLAINT FAILS TO STATE A CLAIM.

Even if subject matter and personal jurisdiction existed, Alien's complaint would have to be dismissed for failure to satisfy the pleading requirements of FED.R.CIV.P. 8 as that rule has been applied in declaratory-judgment actions involving patents. Rule 8 requires that a complaint give fair notice of what the plaintiff's claim is and the grounds upon which it rests in the form of "short and plain statement of the claim showing that the pleader is entitled to relief. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957). In patent cases (both infringement actions and declaratory-judgment actions), failure to identify specific products that are supposedly non-

---

[3] *See* note 1, *supra.*

infringing renders the complaint so unclear as to require dismissal. *See, e.g., McPhereson, Ltd.*, 960 F.2d 156, 1992 WL at *3.

Alien's non-infringement contentions provide no useful information about which Alien products are supposedly non-infringing. Comp., ¶¶ 23, 29, 35, 41, 47, 53, 59, 65, 71, and 77. ("[n]one of [Alien's] products, ***including but not limited to***, its RFID tags and readers, infringe any valid claim of the . . . patent"). Pleading that a group of unidentified products do not infringe is the same as not pleading any facts at all. *See, e.g., Ondeo Nalco Co. v. Eka Chems., Inc.*, Case No. Civ.A. 01-537-SLR, 2002 U.S. Dist. LEXIS 26195, 3-5 (D.Del. June 10, 2002) (dismissing counterclaims because "the pleadings are too vague to provide plaintiff with fair notice of which products are accused of infringing defendant's patents.").

This lack of specificity is unacceptable because it would force the Intermec defendants to conduct a Rule 11 analysis of each product ever made by Alien to determine whether any of those products infringe any of the 10 patents-in-suit and to complete all of this before the deadline for answering the First Amended Complaint. *Antonius v. Spalding*, 275 F.3d 1066 (Fed. Cir. 2002). The only way to avoid this manifestly unfair situation is to dismiss the complaint for failure to state a claim for which relief can be granted.

### CONCLUSION

For the above stated reasons, Alien's First Amended Complaint must be dismissed without leave to amend for lack of subject matter and personal jurisdiction and improper venue. In the alternative, the First Amended Complaint must be dismissed for failure to state a claim for which relief may be granted.

Respectfully Submitted,

INTERMEC, INC., INTERMEC TECHOLOGIES
CORP., and INTERMEC IP CORP.


By: s/ Ronald H. McLean
One of Its Attorneys

Carson P. Veach
Leland W. Hutchinson, Jr.
David S. Becker
Jacob D. Koering
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
(312) 360-6000 phone
(312) 360-6595 fax

*Of Counsel:*
Ronald H. McLean
Jane L. Dynes
SERKLAND LAW FIRM
10 Roberts Street
P.O. Box 6017
Fargo, ND  58108-6017
(701) 232-8957 phone
(701) 237-4049 fax

Dated:  June 29, 2006