IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALIEN TECHNOLOGY CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:06-cv-00051-RSW-KKK |
| vs. | ) | |
| | ) | |
| INTERMEC, INC., INTERMEC TECHNOLOGIES CORPORATION, and INTERMEC IP CORP., | ) | |
| Defendants. | ) | |

### ALIEN TECHNOLOGY CORPORATION'S L.R. 7.1(B)(2) SEPARATE STATEMENT OF MATERIAL FACTS AS TO WHICH IT CONTENDS THERE EXISTS A GENUINE ISSUE TO BE TRIED

Plaintiff Alien Technology Corporation ("Alien") submits this Separate Statement of Material and Undisputed Facts pursuant to Local Rule 7.1(B)(2) in response to the Separate Statement of Intermec, Inc., Intermec Technologies Corp. ("ITC"), and Intermec IP Corp. ("IIP") (collectively referred to herein as "Intermec") filed in support of their motion to dismiss. As required by Local Rule 7.1(B)(2), this Separate Statement is a short and concise statement of material facts as to which Alien contends there exists a genuine issue to be tried, such that the facts set forth in Intermec's Separate Statement which are controverted herein shall not be deemed admitted pursuant to Local Rule 7.1(B)(3).

Paragraphs 7, 8 and 9 of Intermec's Separate Statement, state that Intermec, Inc. does not manufacture or sell any products or services, that Intermec, Inc. does not have any customers in North Dakota or elsewhere, and that Intermec, Inc. has no


offices or employees located in North Dakota and does not own any assets in North Dakota. This rendition of facts fails to account for the absence of any real distinction, in practice, between the business activities of Intermec, Inc., and those of its subsidiary ITC. In fact, ITC is the agent in the United States through which Intermec, Inc. conducts business, such that the products and services sold by ITC, the customers of ITC, and the offices and employees of ITC are effectively those of Intermec, Inc. While the two companies are incorporated separately, they maintain offices at the same location, share officers and directors, issue consolidated financial statements, and file consolidated tax returns. Declaration of Megan M. La Belle ("La Belle Decl."), ¶ 9, Exh. D; Declaration of Sarah A. Herman ("Herman Decl."), ¶ 5, Exh. G at 36:16-37:2. Clear and overt evidence of this agency relationship is found in representations made by Intermec, Inc. regarding its products and services, where the products and services being referenced are those of its wholly owned and controlled subsidiary ITC. *E.g.*, Aaron Decl., Exh. A, B-Q.

Paragraphs 12 and 13 of Intermec's Separate Statement state that IIP's sole business is to own patents, enforce them, and collect royalties, and that IIP has no offices or employees in North Dakota. These facts too overlook the close interrelationship between IIP and its parent corporation, ITC. Although IIP is the sole owner of the patents at issue in this lawsuit, as well as the vast majority of Intermec's patent estate, ITC manufactures and sells products covered by those patents without a license from IIP. Herman Decl., ¶ 5, Exh. G at 58:20-59:24, 66:22-68:7. Indeed, Intermec's 30(b)(6) witness (for all three Intermec defendants) testified that no license between the entities is necessary because the companies "are related." *Id.* Further,

controlling Federal Circuit law holds that a patent-holding subsidiary such as IIP is subject to suit in the fora where its parent operating company is subject to suit. *Dainippon Screen Mfg. Co., Ltd. v. FMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998).

Paragraph 16 of Intermec's Separate Statement states that ITC does not manufacture any products in North Dakota, that it has no offices or employees in North Dakota, that it does not own any assets in North Dakota, and that it never paid taxes or filed suit in North Dakota. In fact, however, ITC has had a license to do business in North Dakota since July 1, 1999. Herman Decl., ¶ 2 Exh. A. ITC has testified that it only holds a license to do business in a given State when it has reached a "significant nexus level" and "presence" in that state. *Id.*, ¶ 5, Exh. G at 26:4-28:20. Moreover, while it may be the case that none of ITC's employees reside in North Dakota, numerous employees of ITC have traveled to North Dakota. La Belle Decl., ¶ 8; Herman Decl., ¶ 5, Exh. E at 23:24-24:16, 25:25-26:8 & Exh. F at 43:1-19. Many of these ITC employees have made repeated trips to North Dakota where they spent days in North Dakota servicing customers, nurturing customer relationships, and attempting to generate additional business. Herman Decl., ¶ 5, Exh. F at 76:5-77:1, 79:6-80:1; La Belle Decl., ¶ 8.

Paragraph 17 of Intermec's Separate Statement states that in its fiscal year 2005, ITC sold products into and provided services for entities in North Dakota of less than $270,000, or .0571% of Intermec, Inc.'s total U.S. sales. The evidentiary support for this statement is lacking. First, the declarant whose declaration contains this assertion, Kenneth Cohen, admitted at his deposition that he has no personal knowledge of this

sales figure, or the sales it represents. Herman Decl., ¶ 5, Exh. G at 30:6-33:13. It must thus be disregarded. Federal Rule of Evidence 602. Second, other evidence reveals that the $270,000 figure accounts only for sales made directly to a company located in North Dakota. It does not reflect any sales made to companies in North Dakota through either resellers or distributors. Herman Decl., ¶ 5, Exh. F at 13:12-24:18, 32:16-33:14, 41:7-42:25; La Belle Decl., ¶ 7. ITC has testified that at least 50% of its sales are made through such indirect channels. Herman Decl.., ¶ 5, Exh. E at 75:14-21; Exh. F at 19:10-20-13. The $270,000 figure also does not account for sales made to its customers with a headquarters outside of North Dakota, but with stores in North Dakota, such as Home Depot, Walmart, and PepsiCo. *Id.*, ¶ 5, Exh. F at 52:4-53:10, 85:20-86:23, 92:17-93:20, 108:12-109:25. In fact, the invoices that were provided to substantiate the $270,000 figure do not identify any sales to Home Depot, La Belle Decl., ¶ 7, but independent evidence shows that the Home Depot located in Fargo, North Dakota uses ITC's products (and, presumably, services as well). Gengel Decl., ¶ 6, Exh. B.

In addition to sales made to North Dakota companies, ITC conducts other business here as well. In particular, in or about September 2002, ITC entered into an agreement with Microsoft Business Solutions ("MBS"), which is headquartered in Fargo and is one of the largest companies in North Dakota. Herman Decl., ¶ 5, Exh. E at 12: 9-13:3, 30:22-31:13; La Belle Decl., ¶ 12, Exh. G. Pursuant to that agreement, ITC and MBS formed an "alliance" that was intended to help ITC sell its products and services to MBS's partners and customers. Herman Decl. ¶ 5, Exh. E at 27:23-31:13; La Belle Decl., ¶ 12, Exh. G. Intermec's website prominently displays this alliance with MBS and

includes substantial information about the various products and services offered in connection with that alliance. La Belle Decl., ¶ 12, Exh. G.

Paragraphs 19 and 20 of Intermec's Separate Statement provide quotations of statements made during the Intermec, Inc. earnings release conference call on May 8, 2006. The answers re-produced in Intermec's Separate Statement are only portions of the answers given to the questions identified. The complete answers can be found in the transcript of the call. Aaron Decl., Ex. A at 12, 16.

Paragraph 21 of Intermec's Separate Statement states that the statements made by Messrs. Winter and Brady were made in the State of Washington. While it may be the case that Messrs. Winter and Brady were physically located in the State of Washington at the time they made the statements, the statements were made on a conference call which was accessible throughout the United States through a dial-in number made available by Thomson Financial. A recording and a transcript of the conference call were also made available throughout the United States by Thomson Financial. Aaron Decl., ¶ 3.

Paragraph 22 of Intermec's Separate Statement states that the statements reproduced in Paragraphs 19 and 20 of its Separate Statement are the only public statements of which Defendants are aware that were made by any of them concerning a possible suit for patent infringement against Alien. In fact, Intermec made numerous other statements regarding its enforcement of its patents against RFID manufacturers, such as Alien. Aaron Decl., ¶¶ 5, 8-19 and Exhibits thereto.

Paragraph 24 of Intermec's Separate Statement states that Alien's

Complaint in this action does not indicate which Alien products are being accused of infringement by Intermec. In fact, Alien's Complaint identifies its "RFID tags and readers" as its products at issue. *E.g.*, First Amended Complaint, ¶ 21.

Paragraph 25 of Intermec's Separate Statement states that Alien's Complaint does not include any allegation that Intermec has accused Alien of infringing the specific patents in suit. In fact, Alien's complaint states, under each count (and each count relates to a single patent in suit), that "The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit." First Amended Complaint, ¶¶ 20, 26, 32, 38, 50, 56, 62, 68, 74. Furthermore, although Intermec's May 8 statement itself does not identify specific patents, Intermec's course of conduct in connection with the standard setting activities of EPCglobal and ISO, as well as its lawsuit against Symbol Technologies Inc., identified specific patents it intended to enforce against RFID manufacturers, such as Alien. *See* Aaron Decl., ¶¶ 8-14, and

//
//
//
//
//
//
//
//

Exhibits thereto. In fact, just weeks after Alien filed the instant action, Intermec sued Alien for patent infringement of six of the same patents at issue here. Aaron Decl., ¶ 6.

Respectfully Submitted,

Dated: October 13, 2006

/s/ Sarah Andrews Herman
Sarah Andrews Herman
Bar Number 03399
DORSEY & WHITNEY LLP
51 North Broadway, Suite 402
P.O. Box 1344
Fargo, ND 58107-1344
Telephone: (701) 235-6000
Fax: (701) 235-9969

and

Gregory P. Stone
Andrea Weiss Jeffries
Megan M. La Belle
MUNGER TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Fax: (213) 687-3701

ATTORNEYS FOR PLAINTIFF ALIEN
TECHNOLOGY CORPORATION