IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALIEN TECHNOLOGY CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3:06-CV-51-RSW-KKK |
| v. | ) ) | |
| INTERMEC, INC., a Delaware corporation, INTERMEC TECHNOLOGIES CORP., a Washington corporation, and INTERMEC IP CORP., a Delaware corporation, | ) ) ) ) ) | Judge Rodney S. Webb<br><br>Magistrate Judge Karen K. Klein |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS**

## **STATEMENT OF ARGUMENT AND AUTHORITIES**

**INTRODUCTION**.................................................................................................................1

**ARGUMENT**........................................................................................................................1

A.  NO ACTUAL CASE IN CONTROVERSY EXISTED AT THE TIME ALIEN FILED ITS
    COMPLAINT .................................................................................................................1

  *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*,
    846 F.2d 731 (Fed. Cir. 1988)...................................................................................2

  *Cerner Corp. v. Visicu, Inc.*,
    No. 04-1033, 2005 WL 2346987 (W.D. Mo. Sept. 26, 2005) ..................................2

  *Mastercard Int'l. Inc. v. Lexcel Solutions, Inc.*,
    No. 03 Civ. 7157 (WHP), 2004 WL 1368299 (S.D.N.Y. June 16, 2004) ................2

  *Applexion S.A. v. Amalgamated Sugar Co.*,
    No. 95 C 858, 1995 WL 229049 (N.D. Ill. April 17, 1995) ....................................2

  *Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*,
    395 F.3d 1324 (Fed. Cir. 1995)................................................................................2

  *West Interactive Corp. v. First Data Resources, Inc.*,
    972 F.2d 1295, 1298 (Fed. Cir. 1992)......................................................................3

  *Indium Corp. of America v. Semi-Alloys, Inc.*,
    781 F.2d 879, 883 (Fed. Cir. 1985)..........................................................................3

  *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
    57 F.3d 1051, 1053 (Fed. Cir. 1995)........................................................................3

B.  THE INTERMEC DEFENDANTS' CONTACTS WITH NORTH DAKOTA ARE INSUFFICIENT TO
    SUBJECT THEM TO PERSONAL JURISDICTION THERE. .................................................3

  *Walker v. Newgent*,
    583 F.2d 163 (5th Cir. 1978) ...................................................................................4

  *Canon Mfg. Co. v. Cudahy Packing Co.*,
    267 U.S. 333 (1925).................................................................................................4

  *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*,
    142 F.3d 1266 (Fed. Cir. 1998)................................................................................5

*Ensign v. Bank of Baker*,
   676 N.W.2d 786 (N.D. 2004) ............................................................................................6

*Stairmaster Sports/Medical Prods., Inc. v. Pacific Fitness Corp.*,
   916 F. Supp. 1049 (W.D. Wash. 1994), *aff'd* 78 F.3d 602 (Fed. Cir. 1996) ...................6

*McGill Tech. Ltd. v. Gourmet Tech., Inc., et al.*,
   300 F. Supp. 2d 501 (E.D. Mich. 2004) ............................................................................6

*Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*,
   62 Fed. Appx. 322 (Fed. Cir. 2003) ..................................................................................6

*3M Innovative Properties Co. v. InFocus Corp.*,
   No. 04-0009, 2005 WL 361494, at *1 (D. Minn. Feb. 9, 2005) ........................................6

*Jennings v. AC Hydraulic A/S*,
   383 F.3d 546, 551 (7th Cir. 2004) .....................................................................................7

*Bridgeport Music, Inc. v. Still N The Water Pub.*,
   327 F.3d 472, 480 (6th Cir. 2003) .....................................................................................7

*Boit v. Gar-Tec Prod., Inc.*,
   967 F.2d 671, 682 (1st Cir. 1992) .....................................................................................7

C.  SINCE ALIEN'S COMPLAINT FAILED TO IDENTIFY SPECIFIC PRODUCTS THAT ALIEN
    BELIEVES ARE ACCUSED OF HAVING INFRINGED IIP'S PATENTS, ALIEN'S COMPLAINT
    MUST BE DISMISSED PURSUANT TO RULE 8(A). .......................................................................7

**CONCLUSION** ...........................................................................................................................7

## INTRODUCTION

In response to the Intermec Defendant's Motion to Dismiss, Alien has filed a lengthy brief with hundreds of pages of affidavits and attached exhibits. None of the legal arguments Alien makes, nor any of the supporting materials it relies on – which largely consist of irrelevant material and/or hearsay statements – support a conclusion that this Court has subject matter jurisdiction over this case, personal jurisdiction over the Defendants, or that Alien has complied with FED.R.CIV.P. 8(a).

## ARGUMENT

### A. NO ACTUAL CASE IN CONTROVERSY EXISTED AT THE TIME ALIEN FILED ITS COMPLAINT.

In its response brief, Alien makes the contention that Steve Winter's statements during the May 8, 2006 conference call amount to an express threat of suit.[1] Of course, in an effort to make such a contention, Alien has been forced to completely ignore the contemporaneous statements made by Larry Brady, Intermec's Chairman, CEO, and Mr. Winter's boss. Immediately after Mr. Winter's statement, Mr. Brady said:

> I think given the circumstances that we are currently looking at – that is, the amazing propensity of people to take business well below cost, and the amazing publicity which such actions receive – that we are apt to move in advance of where we would have originally intended. And indeed, the limitation on when we will take action now is more related to just the [wickets] that we have to go through – that is, [get the] product, and disassemble the product and understand that infringement is occurring. Because we've got a certain obligation, before we

---

[1] Mr. Winter stated in response to a question from an investor:

> It's obviously disappointing if any customer were to do business with a supplier that is not licensed. But you know, we have consistently stated we will be pursuing infringers. We are putting together cases. We are looking at those who are most disruptive to the industry right now. And basically, preparations are underway with respect to unlicensed suppliers like Alien and others. And we expect those enforcement actions by the end of the year, or within this year.

Transcript of the Intermec, Inc. Earnings Conference Call, Dated May 8, 2006 ("Earnings Call Tr."), attached to the Declaration of David S. Becker ("Becker Decl.") as Exhibit C at p. 12.

1

> can just go out and willy nilly start filing lawsuits, to demonstrate that there's a cause of action. So that is the path that we are currently on.

Earnings Call Tr. at p. 16. Thus, as expressed by the top corporate officer, Intermec had work to do to determine who, if anyone, was infringing its intellectual property and what could legally be done about it. Mr. Brady never says Intermec is going to actually sue anyone, let alone Alien.

The case law cited by Alien also does not support the proposition that Mr. Winter's statements can be considered in a vacuum or that his statement alone could create an objectively reasonable apprehension of suit. In *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988), the court determined that the plaintiff had an objectively reasonable apprehension of suit because the defendant sent letters both directly to the plaintiff and to the plaintiff's customer in which it specifically identified a single patent which it believed was being infringed. *Id.* at 737-8. Likewise, *Cerner Corp. v. Visicu, Inc.*, No. 04-1033, 2005 WL 2346987 (W.D. Mo. Sept. 26, 2005), *Mastercard Int'l. Inc. v. Lexcel Solutions, Inc.*, No. 03 Civ. 7157 (WHP), 2004 WL 1368299 (S.D.N.Y. June 16, 2004) and, *Applexion S.A. v. Amalgamated Sugar Co.*, No. 95 C 858, 1995 WL 229049 (N.D. Ill. April 17, 1995), all involved a direct accusation identifying the product at issue and the precise patent being infringed.

Apparently knowing that it does not have the factual basis for a legitimate claim of subject matter jurisdiction based on an "express threat," Alien goes to extensive lengths to cobble together a totality-of-the-circumstances theory upon which it hopes subject matter jurisdiction might be based. Alien completely fails.

First, Alien, without any legal support, argues that ITC's participation in the EPC Global and ISO standard-setting processes gave Alien an objectively reasonable apprehension of suit. ITC's actions in this regard cannot give rise to such an apprehension. *See Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324 (Fed. Cir. 1995) (rejecting as a basis for an apprehension

2

of suit a declaratory-judgment defendant's declaration of patents as part of compliance with FDA regulations). Second, Alien claims an apprehension of suit based on the fact that, in 2004, Intermec IP sued someone for infringement of one of the patents that Alien has chosen to include in this case. However, this fact is of no help to Alien. *See West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1298 (Fed. Cir. 1992) (prior actions against others insufficient to give reasonable apprehension of suit); *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) (same). Third, Alien submits the affidavit of Victor Vega, claiming that in 2004 someone at Intermec indicated to a potential Alien customer that Intermec intended to sue Alien. Not surprisingly, the Vega Declaration contains no admissible evidence and is the subject of a pending motion to strike. (Docket Nos. 76, 77). Fourth, Alien points to several articles in a Korean-language technology publication, which do not threaten suit. Moreover, there is no evidence that these articles were ever read by anyone at Alien, before or after suit was filed.[2] *See* Declaration of Megan LaBelle ("LaBelle Decl.") at ¶ 14. (Docket No. 46). Fifth, Alien takes the position that two letters sent to Alien in mid-2005 in relation to a licensing program gave Alien an objectively reasonable apprehension of suit in mid-2006. However, it is well settled that a patentee's offer of a license, without more, is insufficient to establish the predicate for declaratory judgment jurisdiction. *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051, 1053 (Fed. Cir. 1995); *Indium Corp.,* 781 F.2d at 883.

**B.   THE INTERMEC DEFENDANTS' CONTACTS WITH NORTH DAKOTA ARE INSUFFICIENT TO SUBJECT THEM TO PERSONAL JURISDICTION THERE.**

Alien concedes that Intermec (a holding company) and IIP (the owner of the patents and a necessary party) have no cognizable contacts with North Dakota and are not subject, under any traditional analysis, to personal jurisdiction there. Moreover, Alien concedes that no Intermec

---

[2] These irrelevant articles are also the subject of a pending motion to strike. (Docket Nos. 78, 79).

3

Defendant has sold any product in North Dakota that reads on any of the claims of the patents-in-suit in this matter. Faced with this lack of any real link between IIP, Intermec, and the patents-in-suit on one hand, and North Dakota on the other, Alien resorts to two strained theories in an effort to find personal jurisdiction. Specifically, Alien attempts to convince this court that it should ignore all the corporate formalities observed by the Intermec Defendants and decide that it can exercise personal jurisdiction over Intermec and IIP based on the very limited North Dakota contacts of an affiliated company, ITC. Accordingly, Alien attempts to persuade this Court that ITC's activities in North Dakota – limited though they are – are adequate to bring that company before this Court, thus ensnaring not only itself in this litigation, but also affiliated companies that have no contacts with the state. Both of these arguments fail based on the law and the facts of this case.

IIP is the sole owner of the patents-in-suit in this case. It does no business in North Dakota, has not licensed any North Dakota-based corporation to practice the patents-in-suit, and it does not have an exclusive licensing arrangement with ITC which would permit this Court to ignore the corporate formalities and exercise jurisdiction over IIP. Declaration of Kenneth Cohen ("Cohen Decl.") at ¶ 15-21, attached to Becker Decl. as Exhibit B. (Docket No. 9).

Other than the limited holding of the *Dainippon* case – which, as discussed below, is inapplicable here – Alien does not present any law supporting the proposition that a parent company's activities in a forum can be imputed to its subsidiary companies where corporate formalities are observed. In fact, the law supports just the opposite conclusion – a parent company's acts in a forum will not be imputed to its separately-operated subsidiary. *See Walker v. Newgent*, 583 F.2d 163, 167-68 (5th Cir. 1978), *citing Canon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925).

4

In *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, the court determined that a patent-holding subsidiary could not avoid personal jurisdiction in its parent company's state of incorporation when the parent company made a threat to sue for patent infringement in the forum state. 142 F.3d 1266, 1271 (Fed. Cir. 1998). Critically, this case contains no discussion of whether the defendants could be subject to general personal jurisdiction, and the analysis focused only on whether threats made by the parent in California could result in the exercise of *specific* jurisdiction in California over its patent-owning subsidiary, who was incorporated elsewhere. *Id.*

That is not the situation here. The Intermec Defendants are challenging personal jurisdiction in North Dakota, where none of them are incorporated. Further, the ruling in the *Dainippon* case also turned on the fact that defendants were trying to avoid jurisdiction in a state where "the parent company operated under the patent [in suit]." *Id.*. at 1271. There is no dispute that ITC does not manufacture anything in North Dakota, including RFID equipment that might embody the patents in suit. Nor is their any question that ITC has never sold any RFID equipment to anyone in North Dakota.

Nor can Alien impute ITC's scant contacts with North Dakota to either Intermec, Inc or IIP. *See Canon*, 267 U.S. at 337. Intermec, ITC, and IIP all consistently recognize their formal separateness and observe all corporate formalities. *See* LaBelle Decl. at Exhibit D (confirming the lack of overlap between officers and directors). (Docket No. 46). *See also* Cohen Decl. at ¶¶ 8-30. IIP even maintains a completely separate principal place of business in Nevada. Cohen Decl. at ¶ 15.

In the absence of personal jurisdiction over IIP, there is no reason for this case to proceed, as ITC does not own the patents-at-issue. Should this Court, however, choose to accept the theory that it is possible to extend personal jurisdiction to IIP based on ITC's activities in

5

North Dakota, it should not do so because ITC's contacts with North Dakota are insufficient to establish personal jurisdiction in North Dakota over even ITC. In the year in which ITC had its greatest amount of sales, ITC's sales to customers in North Dakota totaled a paltry 0.064% of ITC's total reported domestic sales.[3] That is a miniscule portion of ITC's sales and does not provide adequate minimum contacts to justify this Court's exercise of personal jurisdiction over ITC. *Ensign v. Bank of Baker*, 676 N.W.2d 786, 791-92 (N.D. 2004); *Stairmaster Sports/Medical Prods., Inc. v. Pacific Fitness Corp.*, 916 F. Supp. 1049, 1053 (W.D. Wash. 1994), *aff'd* 78 F.3d 602 (Fed. Cir. 1996); *McGill Tech. Ltd. v. Gourmet Tech., Inc., et al.*, 300 F. Supp. 2d 501, 508 (E.D. Mich. 2004), *citing Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed. Appx. 322 (Fed. Cir. 2003). Even if the falsely high numbers for ITC sales in North Dakota advanced by Alien are used in the calculation, the percentage of total reported domestic sales that these North Dakota sales represent falls well below the threshold recognized by the courts as supporting personal jurisdiction. In *3M Innovative Properties Co. v. InFocus Corp.*, on which Alien relies, the court found the exercise of general jurisdiction to be proper where the fact that the defendant's sales to Minnesota the preceding year were .64% of its total sales was one of several factors that the court considered "as a whole" in making the jurisdictional determination. No. 04-0009, 2005 WL 361494, at *3-4 (D. Minn. Feb. 9, 2005). Here, taking Alien's estimation of $2.1 million in North Dakota sales from 2001 through 2005 as correct, this would still be but .075% ITC's of total reported domestic sales, far less than that found to be part of a sufficient showing of general jurisdiction in *3M*.[4]

---

[3] The percentages referenced herein are based on an accurate compilation of the invoices produced to Alien in this case and relied on in the LaBelle Declaration, and ITC's reported domestic sales as stated in both Intermec Inc.'s 2005 10-K filing, on which Alien also relies, as well as Unova's 10-K filings since 2001, the Court's consideration of which is the subject of a pending motion. (Docket No. 85).

[4] And even ignoring these percentage comparisons, the *3M* case involved a total Minnesota sales number that was almost 10 times the figure Alien offers here for a five-year period, rendering any analogy between the present facts

Additionally, Federal Courts do not routinely permit the exercise of personal jurisdiction over a manufacturer based on independent re-sellers' and/or distributors' activities in the forum. *See Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 551 (7th Cir. 2004); *Bridgeport Music, Inc. v. Still N The Water Pub.,* 327 F.3d 472, 480 (6th Cir. 2003); *Boit v. Gar-Tec Prod., Inc.*, 967 F.2d 671, 682 (1st Cir. 1992). Thus, the issue of whether any re-seller has sold products in North Dakota is irrelevant to personal jurisdiction here.

Finally, Alien argues that ITC can be subject to general personal jurisdiction in North Dakota because it formerly maintained a business relationship with Microsoft Business Solutions ("MBS"), a Minnesota Corporation that is a subsidiary of Microsoft of Redmond, Washington and which has some operations in Fargo. Legally, this relationship has no more bearing on the issue of general jurisdiction than the above discussed *de minimis* sales.

C. **SINCE ALIEN'S COMPLAINT FAILED TO IDENTIFY SPECIFIC PRODUCTS THAT ALIEN BELIEVES ARE ACCUSED OF HAVING INFRINGED IIP'S PATENTS, ALIEN'S COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 8(A).**

The Intermec Defendants rely on their argument, set forth in their Memorandum in Support of Their Motion to Dismiss, that Alien's Amended Complaint should be dismissed for failure to comply with Fed.R.Civ.P. 8. Alien's request to replead in the event this Court agrees that the Complaint is defective should be denied on the grounds that this Court does not have subject matter jurisdiction or personal jurisdiction over the Intermec Defendants.

## CONCLUSION

For the foregoing reasons, Intermec, Inc., Intermec Technologies Corp., and Intermec IP Corp., respectfully request that this Court grant the Intermec Defendants' Motion to Dismiss.

---

and the holding in *3M* untenable. 2005 WL 361494, at *3 (noting sales of almost $20 million over the 5 years preceding the case).

Dated: November 20, 2006

Respectfully Submitted,

INTERMEC, INC., INTERMEC TECHNOLOGIES CORP., and INTERMEC IP CORP,

By: /s/ Ronald H. McLean
One of Its Attorneys

Ronald H. McLean
Jane L. Dynes
SERKLAND LAW FIRM
10 Roberts Street
P.O. Box 6017
Fargo, ND 58108-6107
(701) 232-8957 phone
(701) 237-4049 fax

and

Carson P. Veach
Leland W. Hutchinson, Jr.
David S. Becker
Jacob D. Koering
FREEBORN & PETERS LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000 phone
(312) 360-6595 fax