```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NORTH DAKOTA
                    SOUTHEASTERN DIVISION
```

ALIEN TECHNOLOGY CORPORATION,   )
                                )
                     Plaintiff, )
v.                              )     Case No. 3:06-cv-51
                                )
INTERMEC, INC., INTERMEC        )
TECHNOLOGIES CORPORATION,       )
and INTERMEC IP CORP.,          )
                                )
                     Defendants.)

## Memorandum Opinion & Order

Plaintiff Alien Technology Corporation ("Alien") has asked this Court to disqualify Roger Stewart, one of its former corporate executives, from serving as an expert for the Defendants (collectively "Intermec") (doc. #213). Because allowing Stewart to serve as an expert would undermine the fairness of this lawsuit, the Court **GRANTS** Alien's motion.

### I.  Facts

From 1999 until 2002, Stewart served as Alien's Chief Technology Officer ("CTO"). During this time, Alien was expanding into Radio Frequency Identification ("RFID") technology and products. As CTO, Stewart led Alien's technological research and development, including Alien's Gen-1 products. According to John Stephen Smith, Alien's founder and current CTO, the Gen-1 technology has been incorporated into the Gen-2 technology at issue in this case. Stewart also led the management of Alien's intellectual property ("IP") strategies, which Smith opines also

1

included meeting with outside counsel to discuss the IP rights of Alien's competitors.

When Alien hired Stewart, he entered into an Employee Proprietary Information and Inventions Agreement in which he agreed to keep Alien's proprietary information confidential (doc. #216-2). When Stewart left Alien's employ, he entered into a Severance Agreement and Release in which he agreed to maintain the confidentiality of Alien's information. After Stewart left Alien, he agreed to consult for Alien on a project-by-project basis. His consulting agreement included a confidentiality clause. The contract also stated either party could "terminate this Agreement by providing 30 days written notice to the other party." (doc. #216-3). Both parties agree that Stewart only worked on one project in 2003 under the agreement. However, neither party gave notice to terminate the agreement until Stewart sent an email to Alien on October 7, 2007.

Intermec wishes to retain Stewart as an expert in this case. Intermec has retained Stewart in the past on an unrelated case involving the same patents. According to Intermec, the Gen-2 products at issue in this case are drastically different than the Gen-1 products Stewart worked on while at Alien. Therefore, Intermec claims Stewart will not be relying on any confidential information he learned while at Alien when he provides advice to Intermec. Alien objects, claiming Gen-2 evolved out of Gen-1 and Stewart would not be able to segment Gen-2 information from information he learned while at Alien. Furthermore, Alien

2

contends Stewart is privy to legal strategies Alien explored when expanding into RFID technology.

**II. Discussion**

Federal courts, as part of their power to manage cases, have inherent power to disqualify experts. Koch Refining Co. v. Jennifer L. Boudreaux, MV, 85 F.3d 1178, 1181 (5th Cir. 1996). Courts, both lower and appellate, have addressed the issue of expert disqualification by using a two prong test: (1) could the party claiming a conflict reasonably conclude it had a confidential relationship with the expert, and (2) did that party disclose any confidential or privileged information to the expert. Id.; Wang Laboratories, Inc. v. Toshiba Corp., 762 F. Supp. 1246, 1248 (E.D. Va. 1991). Courts have also discussed policy considerations such as the right of a party to retain an expert of its choosing, the prejudice the retaining party might experience if not allowed to choose its own expert, and maintaining the integrity of the judicial process. Koch, 85 F.3d at 1182; Space Sys./Loral v. Martin Marietta Corp., No. 95-20122 SW, 1995 WL 686369, at *2, *3 (N.D. Cal. Nov. 15, 1995).

Alien has shown it had a confidential relationship with Stewart. Stewart entered into three different contracts with Alien, all of which had confidentiality provisions. Although Intermec argues the consulting agreement could be terminated at will and no projects had been undertaken for years, neither party acted to terminate the agreement until October 2007. The

contract bound Stewart until then. Therefore, it was reasonable for Alien to believe they had a confidential relationship with Stewart.

Alien has also shown it disclosed confidential and privileged information to Stewart. He was a high ranking executive at Alien. He was knowledgeable of Alien's product line, its future strategies, and its legal and intellectual planning. While Gen-1 and Gen-2 may be very different and while Stewart may not think at this time any knowledge he gained at Alien will be relevant, the danger is that no one may know how the information he learned from Alien may affect his opinion and Stewart may inadvertently use confidential information. The human brain does not compartmentalize information in that manner.

Finally, public policy weighs in favor of disqualifying Stewart. While Intermec does have the right to choose its own experts, the Court must be cognizant of the fairness of the judicial process. Stewart's involvement in this case does not pass the "smell test" and would color the opinions he gave. This situation is different than <u>Space Systems</u> where the experts had "done work for" the other party. 1995 WL 686369, at *2. Stewart was a high ranking leader at Alien. Furthermore, Intermec has not shown how it would be prejudiced by losing Stewart as an expert. In fact, in its brief, Intermec did not even address the issue, stating "it would be improper to even reach the question . . . ." (doc. #251, at 12). This indicates to the Court that no good argument could be made for prejudice because if there was,

4

Intermec would have informed the Court. Stewart is certainly well qualified as an expert in RFID technology, but so are many others. This is not the case where there are few experts on the topic. Therefore, fairness of the case requires Stewart be disqualified.

Finally, the Court thanks Intermec for supplying it with a possible stipulation that would allow Stewart to testify but still protect Alien's concerns. However, the Court is concerned that the proposal does not insulate the case from the potential unfairness in the overlap of information.

### III. Conclusion

Alien's motion to disqualify Stewart from acting as an expert is **GRANTED**. Roger Stewart is barred from acting as an expert for either party in this case.

**IT IS SO ORDERED.**

Dated this 30th day of November, 2007.

RODNEY S. WEBB, District Judge
United States District Court