IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

ALIEN TECHNOLOGY CORPORATION,   )
                                )
                Plaintiff,      )
v.                              )        Case No. 3:06-cv-51
                                )
INTERMEC, INC., INTERMEC        )
TECHNOLOGIES CORPORATION,       )
and INTERMEC IP CORP.,          )
                                )
                Defendants.     )

### Memorandum Opinion & Order

Defendants (collectively "Intermec") move to dismiss Count IX for unfair competition and move for summary judgment of Count X for fraud of the Plaintiff's Third Amended Complaint (doc. #224 & #225).  The Court concludes Plaintiff Alien Technology Corporation ("Alien") cannot meet the elements of unfair competition under the law of Washington state,[1] so Intermec's motion to dismiss is **GRANTED** (doc. #224).  However, the Court concludes Alien has created a genuine issue of material fact on its fraud claim, so Intermec's motion for summary judgment is **DENIED** (doc. #225).

## I.   Motions to Strike

Before the Court addresses these two motions, it must address the two motions to strike the parties have filed.  First,

---

[1] The parties do not dispute Washington law controls these causes of action because Intermec is headquartered in Washington and the conduct allegedly creating the causes of action occurred in Washington.  Therefore, the Court will not conduct a choice-of-law analysis under North Dakota law.

Alien has objected to Intermec's Statement of Undisputed Material Facts filed in support of the motion to dismiss Count IX, claiming Intermec's reference to correspondence between Intermec and EPCglobal and between Intermec and Alien are improper for a motion to dismiss (doc. #281). However, at the request of the parties, the Court gave both parties an opportunity to supplement its filings after oral argument on the motion. Alien has in turn filed documents in support of its opposition to the motion to dismiss (docs. #329 & #330). Also, the Court concludes review of this correspondence is necessary for proper resolution of the motion. Therefore, Alien's motion is **DENIED**.

Second, Intermec has objected to two documents Alien filed with its response to Intermec's summary judgment motion (doc. #293). Intermec argues one document, an internet article about the RFID industry, is hearsay. However, the Court agrees with Alien that the article is not offered to prove the truth of the matters asserted, so it is not hearsay. Fed. R. Evid. 801(c) Intermec next argues the document titled "Intermec's Comments on EPCglobal's IP Assessment" has not been given the proper foundation. However, the document was produced during discovery and Smith's declaration describes how Alien regularly received industry communications. The Court is satisfied the document is what it is purported to be. Intermec's motion is **DENIED**.

## II.  Facts

The facts surrounding Alien's unfair competition and fraud claims arise from claims 1-10 of U.S. Patent 6,400,274 (the "'274 Claims") and Intermec's and Alien's involvement in the standard setting organization ("SSO") EPCglobal, Inc.  EPCglobal is an SSO that developed standards for the production of radio frequency identification ("RFID") products, known as Class 1 Generation 2 ("Gen 2").

Members of EPCglobal agree to follow EPCglobal's Intellectual Property Policy ("IPP") (doc. #239-2).  The IPP requires that members disclose their intellectual property rights they believe are necessary to practice a proposed standard.  A "necessary claim" "means all present, pending and hereafter acquired patent claims that would be necessarily infringed by implementing a Specification.  A claim is necessarily infringed only when it is not possible to avoid such infringement because there is no non-infringing alternative for implementing the specification."  IPP § 1.7.

IPP § 3.1 controls the granting of royalty-free licenses. EPCglobal members may grant royalty-free licenses for the benefit of other EPCglobal members to use in practicing the standard. Licensees can use the patent to create a product that will meet the EPCglobal standard and specification.  Section 3.1 is expressly subjected to IPP §§ 3.2 and 3.4.  IPP § 3.2 requires reciprocity licensing for any necessary claims a licensee may

have.  If a group participant chooses not to extend a royalty-free license under § 3.1, it must give notice under § 3.3.  The specification working group's trustee may then either return the proposed specification to the working group, decline the ratification of the specification, or proceed under IPP § 3.4.

Under IPP § 3.4, group participants may license necessary claims on royalty-bearing, reasonable and non-discriminatory ("RAND") terms.  That way, the specification can still be ratified and the patentholder will acquire a reasonable royalty. Section 3.4 balances EPCglobal's goal of developing a standard with the members interest in receiving a return on its patent portfolio.

As the Gen 2 specification moved through development, Intermec submitted notices to EPCglobal on what it believed were necessary claims within its patent portfolio.  On April 14, 2004, Intermec sent a letter to the EPCglobal Gen 2 Working Group stating it believed it had several patents that include necessary claims (doc. #286-2).  The '274 claims were included in that list.  Intermec stated it would make a formal declaration as to RAND and royalty-free licensing under IPP §§ 3.3 and 3.4.  On May 28, 2004, Intermec sent a letter to the ECPglobal Global Proposal Team regarding its position on necessary claims (doc. #286-3). It discussed Intermec's intent for RAND and royalty-free licenses.  The '274 claims are listed with patents Intermec states it will license "on a royalty free basis, under a separate licensing agreement."

On August 9, 2004, Intermec sent a letter to Sue Hutchinson, HAG Facilitator at EPCglobal, as its declaration under the IPP (doc. #286-4).  It declared five patents on "a Royalty Free Basis, available for license on a reciprocal basis as provided in the EPCglobal IPP," including the '274 claims.  Exhibit 1 of the letter states, "The following patents would be licensed on a royalty free basis, under a separate license agreement pursuant to EPCglobal IPP Section 3.1 and 3.2."  The '274 claims were listed.

On October 1, 2004, Intermec sent an updated declaration to Ms. Hutchinson to address a new version of the Gen 2 standard (doc. #239-7).  This letter is substantially the same as the August 9, 2004, letter and offered the '274 claims for license "on a royalty free basis, under a separate licensing agreement pursuant to EPCglobal IPP Section 3.1 and 3.2[.]"  This was Intermec's final declaration for the Gen 2 specification that was ratified.  The declaration also included nine patents it was disclosing on RAND terms.

After these communications, EPCglobal asked for an opinion from its outside counsel concerning whether the nine RAND patents were necessary claims.  From this opinion, EPCglobal concluded they were not, and a dispute arose between EPCglobal and Intermec.  Intermec responded by issuing an Intermec publication titled, "Intermec's Comments On EPCglobal's IP Assessment" (doc. #286-7).  It stated, "Intermec donated five (5) of the declared patents to the industry on a royalty-free basis."

Alien filed this declaratory judgment action in June 2006, claiming invalidity or non-infringement of ten patents including the '274 patent (docs. #1 & #4).  While the complaint does not limit its suit to claims 11 through 34 of the '274 patent, Alien claims it sued on claims 11 through 34 only, believing that Intermec had agreed to not assert infringement on claims 1-10 and that Alien had a royalty-free license.  However, when Intermec counter-claimed for infringement, it claimed infringement of the '274 patent without exception for claims 1-10 (doc. #110).[2] Also, in its preliminary infringement contentions, Intermec claimed Alien infringed claims 1-5 and 7-9 of the '274 patent. Alien claims this surprised the company because of Intermec's statements to EPCglobal that it would not assert infringement and would grant a royalty-free license on the '274 claims.

Alien raised its concerns about the '274 claims to Intermec. The parties discussed a license for the '274 claims but to no avail (doc. #240 and attachments).  The Court then allowed Alien to file a third amended complaint, raising Count IX and Count X (doc. #209).  Alien claims Intermec's statements to and actions within EPCglobal and its subsequent contentions in this lawsuit constitute unfair competition and fraud under Washington law.

---

[2]   Intermec included the '274 patent in its infringement lawsuit against Alien filed in the United States District Court for the District of Delaware.  That suit was consolidated into this one.

## III. Unfair Competition

### A.    Standard of Review

Generally, a motion to dismiss for failure to state a claim has a deferential factual review that examines only the pleadings. McAuley v. Federal Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007).  However, in its motion and filings in support of the motion, Intermec refers to matters outside the pleadings (doc. #238).  Furthermore, Alien has submitted a number of documents outside the pleadings to contest the motion (docs. #329-#330). Rule 12(d) of the Federal Rules of Civil Procedure provides a motion under Rule 12(b)(6) must be treated as a motion for summary judgment under Rule 56 when matters outside the pleadings are presented to and not excluded by the Court.  Both parties have presented matters outside the pleadings; were given the opportunity, without objection from the other party, to supplement their submissions to the Court; and have asked the Court to consider these matters.  Therefore, to provide a complete review of Intermec's motion, the Court concludes it must treat this motion as one for summary judgment under Rule 56. McAuley, 500 F.3d at 788; BJC Health System v. Columbia Cas. Co., 348 F.3d 685, 687-88 (8th Cir. 2003).  Cf. Levy v. Ohl, 477 F.3d 988, 991-92 (8th Cir. 2007)(holding it was not necessary to convert 12(b)(6) motion into a motion for summary judgment where the extra-pleading matters were part of the public record).

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is "material" if it might affect the outcome of a case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  The non-movant "must show there is sufficient evidence to support a jury verdict in [its] favor." Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999).  The non-movant cannot rely solely on the pleadings and must present specific facts by affidavit or other evidence showing a genuine issue of material fact.  Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 890 (8th Cir. 2005).  The court views the facts and the inferences to be drawn from the facts in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B.   Washington Unfair Competition**

Courts have held that allegedly deceptive conduct when interacting with an SSO can create a claim for anticompetitive conduct.  See Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 314 (3d Cir. 2007)(upholding a cause of action for anticompetitive conduct under the Sherman Act and the Clayton Act).  Generally, unfair competition under the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.020, has five elements: "(1)

unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 719 P.2d 531, 532 (Wash. 1986).  Furthermore, in order to protect a patentholder's right to publicize its patent in the marketplace, the Federal Circuit has required an element of bad faith be alleged for state unfair competition claims to survive federal conflict preemption.  <u>Hunter Douglas, Inc. v. Harmonic Design, Inc.</u>, 153 F.3d 1318, 1336 (Fed. Cir. 1998)("federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith.").

The parties argue about whether an element of bad faith is required and whether Alien has sufficiently pled and proven it. The Court concludes <u>Hunter Douglas</u> does require a showing of bad faith because the same conflict preemption concerns exist whether a patentholder is communicating an alleged infringement or its position in regard to licensing its patents in the marketplace. However, Alien has created a genuine issue of material fact regarding bad faith.  First, it has pled, "By refusing to grant Alien a royalty-free license, Intermec has wrongfully interfered with Alien's reasonable business expectation, and has caused Alien harm."  (Doc. #209 at 17).  While not elaborately pled, this put Intermec on notice that it was being accused of wrongful, bad-faith conduct.  Second, Alien has presented

evidence that Intermec had offered the '274 claims on a royalty-free basis.  Since then, the parties' conduct in this litigation presents a genuine issue of material fact as to what Intermec's intent was at the time it made those statements about the '274 claims.  Therefore, Alien has sufficiently proven this element.

The Court also concludes Alien has created a genuine issue of material fact regarding the unfair or deceptive act, trade or commerce, injury, and causation elements.  However, Washington law requires the more unique element of public interest impact.  This element requires more analysis.

The Washington Supreme Court has acknowledged Washington is in a slim minority in requiring a public interest impact for unfair competition.  Hangman Ridge, 719 P.2d at 536-37.  However, rather than abandon the element, the court clarified the test.  Id. at 538.  In doing so, the court enumerated two different factor-based tests; one for consumer transactions and one for private disputes.  Id.  This case presents the Court with a private dispute between two industry competitors.  Therefore, this Court must weigh the following factors: "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?"  Id.

In Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., the Washington Court of Appeals applied the public interest element.

10

935 P.2d 628, 635 (Wash. Ct. App. 1997).  Goodyear involved a
dispute between Goodyear Tire and a local tire dealer about
whether Goodyear could directly compete with the dealer.  Id. at
631.  The dealer counterclaimed for several causes of action,
including the Washington CPA.  Applying Hangman Ridge, the
Goodyear court held, "Only acts that have the capacity to deceive
a substantial portion of the public are actionable."  Id.  After
applying the public-interest factors, the court concluded
Goodyear's acts did not affect the public interest.  Id. at 635.
Particularly important for that court was the relationship
between Goodyear and the dealer.  Id.

     In this case, Intermec committed the alleged acts in the
course of its business.  Intermec is a large member of the RFID
industry and was involved in the EPCglobal Gen 2 standard
development.  Next, Alien argues Intermec advertised its
licencing position to the general public.  In support, Alien has
filed a number of Intermec releases, general-circulation
articles, and electronic-industry and business articles stating
Intermec donated five patents to the Gen 2 standard (docs. #329-
#330).  The Court takes a mixed view of this factor and evidence.
While all of these publications were available for the public to
read, the expected audience is primarily those within the
electronics or retail industries.  While this is certainly a
large population, it is not a limitless one.  It is unlikely
these statement would deceive a "substantial portion" of the
public.  Regarding the third factor of active solicitation,

Intermec did not actively solicit the '274 claims to Alien or other companies. Intermec's conduct was either within EPCglobal, limited to declaring necessary claims, or as part of a much larger licensing program known as "Rapid Start." The Rapid Start program was a wide based licensing program to which the '274 patent was a small part. This weighs against unfair competition. Finally, the parties hardly occupy unequal bargaining positions. Both are large companies and are competitive in the RFID industry. As in Goodyear, both parties are familiar with the other and are in a superior position to understand patent licensing and the value of a licensing proposal.

Viewing the facts in the light most favorable to Alien, the Court concludes Alien has not created a genuine issue of material fact on this element. While Intermec was acting within its business and did communicate its "donation" to the public, the intended audience of those communications was logically limited, it did not solicit Alien, and the two are in equal bargaining positions. This is a case of two companies involved in a patent dispute, not one where a company is deceiving the marketplace through unfair competitive tactics. The facts of this case cannot support a claim for unfair competition under Washington law. Therefore, Intermec's motion is **GRANTED**, and Count IX of Alien's Third Amended Complaint is dismissed.

## IV.  Fraud

The Court applies the summary judgment standard discussed above to Intermec's motion for summary judgment on Alien's fraud claim.  Under Washington law, fraud has nine elements that must be proven by clear and convincing evidence: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." Stiley v. Block, 925 P.2d 194, 204 (Wash. 1996).

Alien has presented a representation of existing fact that is material for the first two elements.  Intermec stated it would give a royalty-free license on and not assert infringement of the '274 claims.  This statement is material because an EPCglobal member practicing a standard has to rely on necessary claims.

Intermec disputes, however, that the representation was false and it, as the speaker, knew it was false.  It argues Alien is trying to prove fraud by hindsight; that is attempting to turn a truthful statement to a fraudulent one by pointing to later occurring facts.  Courts have held this is an improper method of proving fraud.  See, e.g., Meehan v. United Consumers Club Franchising Corp., 312 F.3d 909, 912 (8th Cir. 2002)("'actual fraud may not be based on representations regarding future

conduct, or on broken promises, unfulfilled predictions or statements of existing intent which are not executed.'")(quoting Doe v. Howe Military Sch., 227 F.3d 981, 990 (7th Cir.2000)). The Court does not question this principal of fraud law. However, as in criminal law, often the only way to prove an actor's intent is to rely on circumstantial evidence of the actions taken by the actor. United States v. Martin, 772 F.2d 1442, 1445 (8th Cir. 1985); United States v. Lawson, 483 F.2d 535, 537 (8th Cir. 1973); 1A Kevin F. O'Malley et al., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 17.07 (2000).

In this case, Alien has produced sufficient evidence to create an issue of fact on this element. Intermec stated it would offer the '274 claims as necessary claims. Intermec then asserted infringement of the claims, arguing that it had removed them under the IPP policy or that Alien did not properly accept the licensing offer. Alien contends this conduct proves Intermec never intended to give anyone a license for the '274 claims as it stated it would, suggesting Intermec was luring other industry members into a patent-infringement trap. The Court concludes Alien has presented sufficient facts to create an issue of fact on elements three, four, and five.

Intermec next argues Alien did not rely on Intermec's representations to EPCglobal. In support of this argument, Intermec notes a memo of Ken Ehrhart of SunBridge Partners taken to summarize a meeting between Ehrhart and David Aaron, Vice President and General Counsel of Alien, and the testimony of Dr.

John Stephen Smith taken during Intermec's Rule 30(b)(6) deposition of Alien (doc. #327 and Exhibit A). Intermec argues both prove Alien was not relying on a license for the '274 claims. Instead, argues Intermec, Alien believes its products have never infringed the patent, showing Alien relied on the strength of its own product rather than a license theory. However, there is nothing inconsistent with a company internally concluding it does not infringe a patent because of its own intellectual property rights but also relying on a license as a contingency. Indeed, if Alien did not rely on a license theory, it would not have attempted to secure a license after this litigation began. Therefore, Alien has created a genuine issue of fact on elements six, seven, and eight.

Finally, Alien has created a disputed issue regarding damages. At a minimum, it has had to defend against Intermec's contentions. Therefore, Intermec's summary judgment motion on Alien's fraud claim must be **DENIED**.

## V. Conclusion

Alien has failed to create a genuine issue of material fact for unfair competition. Therefore, Intermec's motion to dismiss (doc. #224), analyzed as a motion for summary judgment under Fed. R. Civ. P. 12(d), is **GRANTED**. However, Alien has created a

genuine issue of material fact for fraud.  Therefore, Intermec's motion for summary judgement (doc. #225) is **DENIED.**

   **IT IS SO ORDERED.**

   Dated this 20th day of February, 2008.


RODNEY S. WEBB, District Judge
United States District Court