IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| ALIEN TECHNOLOGY CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> INTERMEC, INC., INTERMEC TECHNOLOGIES CORPORATION, and INTERMEC IP CORP., <br><br> Defendants. | Case No. 3:06-cv-51 |

### Order Granting Summary Judgment of No Willful Infringement

Plaintiff Alien Technology Corporation ("Alien") moves for summary judgment on Defendants' (collectively "Intermec") claims of willful infringement (Doc. #608). The Court, having considered all of the briefs and documents filed by the parties, now issues this memorandum opinion and order.

**SUMMARY OF DECISION**

Under the recent direction of the Court of Appeals for the Federal Circuit, a patentee must satisfy a two-pronged test to support a claim for willful infringement. First, the patentee must show by clear and convincing evidence that the accused infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. If the first prong is met, the patentee must also show that this objectively-defined risk was either known or so obvious that it should have been known to the accused infringer.

In this case, Intermec fails to meet the heightened standard

set forth by the Federal Circuit. As a result of close questions of infringement, Alien's valid defenses, and Alien's reliance on competent opinions of counsel concluding that its products did not infringe, no reasonable jury could conclude there was an objectively high likelihood of infringement. Therefore, summary judgment of no willful infringement is appropriate.

## FACTUAL BACKGROUND

In 2004 and thereafter, Intermec and Alien were members of EPCglobal, Inc. ("EPCglobal"), a standard setting organization that develops industry-standard specifications for RFID technology. Members are required to abide by EPCglobal's IP Policy ("the EPCglobal IPP"), which defines certain patent claims owned by its members as "Necessary Claims". Necessary Claims are those patent claims that would necessarily be infringed by members when they are implemented in EPCglobal's Specification. EPCglobal IPP § 1.7. Accordingly, members owning claims that may be Necessary Claims are subject to certain disclosure and licensing requirements.

In 2004, Intermec identified several patents it believed were Necessary Claims for the Gen2 specification being considered by the EPCglobal working group, including U.S. Patent No. 5,850,181 ("the 181 patent") and patent application 2003-0137400A1, which later issued as U.S. Patent No. 6,812,841 ("the 841 patent"). Alien was thus made aware of these patents at that

time. In April and November 2005, Intermec made similar disclosures to the International Standards Organization ("ISO"), a separate standards setting organization, including identification of the '181 and '841 patents.

In the Spring of 2005, Intermec also invited members of the RFID industry to participate in its "Rapid Start" licensing program. Under the program, industry members had a limited time to license Intermec's entire patent portfolio at a discount. Although many industry members took part in the program, Alien opted against participating in the licensing agreements.

Subsequent to these events, Alien determined internally that none of its products infringed Intermec's patents. On December 14, 2004, EPCglobal's counsel also determined in an opinion letter that Intermec's patents did not include Necessary Claims, and thus the Gen2 specification could be practiced without infringing the patents. Alien also sought its own legal opinions around August 2004 from Blakely Sokoloff Taylor and Zafman ("BSTZ"), an intellectual property and patent law firm, as to whether Alien's products infringed Intermec's patents. On February 28, 2005, BSTZ concluded in a written opinion that Alien's products did not infringe the '181 patent or U.S. Patent No. 5,828,318 ("the '318 patent"). In May 2006, Alien asked BSTZ to provide an opinion on the '841 patent, and in July 2006 BSTZ determined in an oral opinion that Alien's products did not

infringe that patent as well.  BSTZ issued a written opinion regarding that determination on September 5, 2006, which reached the same result.

Alien filed this action on June 1, 2006, seeking declaratory judgment of non-infringement and invalidity of ten patents. Intermec also filed a complaint for infringement in the District of Delaware on June 29, 2006, alleging willful infringement of six of these ten patents, as well as willful infringement of four other patents, including the '318 patent, U.S. Patent No. 6,812,852 ("the '852 patent"), and U.S. Patent No. 5,528,222 ("the '222 patent").  The day after Intermec filed its complaint, Alien asked for legal opinions on the '222 patent and the '852 patent.  BSTZ again concluded that Alien's products did not infringe either of these patents.

Intermec challenges the weight these opinions should be given, however.  According to Intermec, many of these opinions failed to address Alien's Gen2 products, and they instead focused on an earlier generation of products.  Furthermore, Intermec asserts, Alien did not acquire opinions on certain patents until after this litigation commenced, such as the October 4, 2006 opinion on the '222 patent, and the December 13, 2006 opinion on the '852 patent.

Although several of the original patents are no longer at issue, Intermec still seeks a determination of willful

4

infringement regarding the five remaining patents-in-suit, consisting of the '222, '318, '852, '841, and '181 patents.

**ANALYSIS**

Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009) (citing Fed. R. Civ. P. 56(c)). "A fact is 'material' if it may affect the outcome of the proceedings, and an issue of material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007), the Federal Circuit heightened the standard for willful infringement. The court held the previous duty of care standard was "more akin to negligence" and thus it was not in agreement with the concept of willfulness in other civil cases. Seagate, 497 F.3d at 1371. In order to bring the law into greater agreement with the general standard, the court established a two-pronged analysis for demonstrating willfulness. First, "[A] patentee must show by clear and convincing evidence that the

5

infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." Id. This is an objective inquiry and the state of mind of the accused infringer is irrelevant at this stage. Id. If the first prong is met, "[T]he patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." Id.

In this case, the Court granted summary judgment of non-infringement with regard to the '222, '318, '852, and '181 patents (Docs. #803, 804, and 805). However, the Court denied each party's motion for summary judgment with regard to infringement of the '841 patent (Doc. #812). As a result of the non-infringement decisions, it is unnecessary for the Court to determine whether Alien willfully infringed the '222, '318, '852, and '181 patents because there remains no objectively high likelihood of infringement. It remains necessary, however, for the Court to analyze the question of willful infringement with respect to the '841 patent.

In determining whether the objective standard is met, the Court first notes that its decision to deny summary judgment of infringement and non-infringement of the '841 patent was a close determination. As the Court stated in its order, each party presented compelling arguments necessitating an ultimate decision

6

from the jury (Doc. #812). In relation to a willfulness inquiry, the closeness of the determination weighs against finding an objectively high likelihood of infringement. <u>DePuy Spine, Inc. v. Medtronic Sofamor Danek Inc.</u>, 567 F.3d 1314, 1337 (Fed. Cir. 2009) (holding that, while the fact that a close issue is submitted to the jury does not foreclose a finding of willful infringement, the district court correctly found there was not an objectively high likelihood of infringement under the intense factual inquiry presented); <u>Cohesive Technologies, Inc. v. Waters Corp.</u>, 543 F.3d 1351, 1374 (Fed. Cir. 2008) ("Because 'rigid' was susceptible to a reasonable construction under which Waters's products did not infringe, there was not an objectively high likelihood that Waters's actions constituted infringement."). Although the question of infringement will ultimately be decided by the jury, Alien's valid defenses establish there is no objectively high likelihood of infringement. <u>Cordance Corp. v. Amazon.com, Inc.</u>, _ F. Supp. 2d _, No. 06-491-MPT, 2009 WL 2257829, at *3 (D. Del. July 27, 2009) ("Therefore, under <u>Seagate</u>'s objective standard, 'both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent.'") (quoting <u>Black & Decker, Inc. v. Robert Bosch Tool Corp.</u>, 260 Fed. Appx. 284, 291 (Fed. Cir. 2008)).

7

Intermec counters that Alien had knowledge of the patents-in-suit after it was provided an opportunity to take part in the "Rapid Start" licensing program. Rather than participate in the program, Alien reviewed the patents and declined to enter specific license agreements. Intermec contends this decision was based, in part, on Alien's "rapid growth" business model that focuses on cost reduction techniques, including avoiding licensing fees.

Whether Intermec's assertions are correct or not, Alien's state of mind in declining to take licenses is inapposite to the objectively-based first prong of Seagate. DePuy Spine, 567 F.3d at 1336. It is irrelevant whether Alien's business model may have influenced it against participating in the "Rapid Start" program. The same is true of Intermec's inference that Alien copied the patents after reviewing them. Id. ("Accordingly, evidence of copying in a case of direct infringement is relevant only to Seagate's second prong, as it may show what the accused infringer knew or should have known about the likelihood of its infringement.").

Moreover, to the extent Intermec's claims are valid on this point, they are nothing more than speculation. If Alien "looked at" the patents, as Intermec alleges, it does not follow that Alien willfully infringed. It is just as likely that Alien acted appropriately by conducting an internal review to investigate the

8

possibility of infringement. Such a review would not, standing alone, warrant a finding of willful infringement. Cf. Finjan Software, Ltd. v. Secure Computing Corp., No. 06-369, 2009 WL 2524495, at *8 (D. Del. August 18, 2009) (holding that the accused infringer acted despite an objectively high likelihood where it knew the patentee's product had only one feature its product did not have, it used the patentee's product as a roadmap to develop its own products, and it knew its accused products infringed where its source code included specific references to the patentee's products).

In addition to its internal review, Alien sought opinions of counsel to further assure itself of non-infringement. Intermec asserts that these opinions are untimely because they were received after Alien allegedly infringed. This argument does not comport with Seagate's abandonment of the affirmative duty of care. If the Court were to accept Intermec's timeliness argument, it would violate Seagate's direction that "there is no affirmative obligation to obtain opinion of counsel," and it would also impose an even stricter obligation by requiring parties to obtain opinions in a specified time period. Seagate, 497 F.3d at 1371. Seagate clearly rejected this proposition. Voda v. Cordis Corp., 536 F.3d 1311, 1327 (Fed. Cir. 2008).

Intermec also disputes the analysis and conclusions of the opinions, arguing they do not address the relevant Gen2 products.

9

The February 28, 2005 letter from BSTZ regarding the '318 patent addresses only previous generation products. It is worthy of note that the supplemental December 13, 2006 letter analyzing both the '318 and '852 patents includes an analysis of Gen2 products. See Doc. #578 at 28 ("As the analysis herein indicates, the Alien RFID tags and readers, for both Class 1, Gen-1 and Class 1, Gen-2, do not infringe any of the '852 patent claims and do not infringe any of the claims of the '318 patent."). Similarly, the September 5, 2006 letter from BSTZ regarding the '841 patent, the primary patent at issue in the above analysis, considers Alien's Gen2 products. See Doc. #576 at 36 ("It is our opinion that claims 1-24 are not infringed by the Alien Class 1, Gen 2 RFID tags or by Alien's methods of operating its RFID tags.").

After careful review of the BSTZ letters, the Court finds the opinions of counsel to be competent. See Acumed LLC v. Stryker Corp., 483 F.3d 800, 810 (Fed. Cir. 2007) ("Those cases where willful infringement is found despite the presence of an opinion of counsel generally involve situations where opinion of counsel was either ignored or found to be incompetent.") (citing Read Corp. v. Portec, Inc., 970 F.2d 816, 828-29 (Fed. Cir. 1992)). The opinions were thoroughly researched and analytically sound, providing Alien a sufficient basis to proceed in its activities without being objectively reckless. Finisar Corp. v.

10

DirecTV Group, Inc., 523 F.3d 1323, 1339 (Fed. Cir. 2008) (holding that a competent opinion of counsel, which concluded that the accused infringer did not infringe the patent at issue, provided a sufficient basis for the accused infringer to proceed without acting in an objectively reckless fashion). Under these circumstances, Alien was justified in relying on the opinions of counsel as it moved forward in its business operations. Acumed, 483 at 811 ("Whether an infringer ignored the opinion of its counsel is, as part of the willfulness inquiry, also a question of degree.").

In light of the close question of infringement of the '841 patent, Alien's valid defenses, and Alien's reliance on competent opinions of counsel concluding its products did not infringe, the Court holds that, as a matter of law, there is not clear and convincing evidence that Alien acted despite an objectively high likelihood of infringement under Seagate's first prong. Given this conclusion, the Court need not address the second prong concerning Alien's state of mind. DePuy Spine, 567 F.3d at 1337 (holding the court need not address arguments concerning copying and other state of mind evidence under the second prong after the Court held that the patentee failed to satisfy the first prong).[1]

---

[1] The parties dispute whether Seagate mandates the filing of a preliminary injunction to preserve a willfulness claim for conduct after litigation is filed. The Court need not address this issue because it holds that there is not clear and convincing evidence to support any willful infringement claim.

11

## CONCLUSION

The Court concludes that the grant of summary judgment of non-infringement renders moot the question of whether a willful infringement occurred regarding the '222, '318, '852, and '181 patents. The Court further holds as a matter of law that an objectively high likelihood of infringement cannot be found as regards the '841 patent. As a result, Plaintiff's motion for summary judgment of no willful infringement is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 7th day of October, 2009.

Ralph R. Erickson, District Judge
United States District Court